UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JOSHUA REECE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:16-cv-00069-GFVT-EBA |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SHELBY COUNTY, KENTUCKY, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

On May 28, 2020, after both sets of Defendants filed Motions to Exclude the Testimony of Plaintiff's Expert Witness, the Court referred those motions to Judge Atkins pursuant to 28 U.S.C. § 636(b). [R. 176.] Judge Atkins has now filed a Recommended Disposition on the motions and both the SHP Defendants[1] and Plaintiff Joshua Reece filed timely and particularized objections. For the reasons that follow, the Recommended Disposition [R. 196] will be partially adopted as the Court's opinion.

**I**

**A**

Judge Atkins's Recommended Disposition accurately sets forth a more detailed account of the factual and procedural background. [R. 196 at 2–5.] In addition to what the Court summarizes in its discussion below, the Court incorporates Judge Atkins's discussion of the record into this Order.

Plaintiff Joshua Reece alleges that he was the subject of a physical assault by other

---

[1] Defendants Southern Health Partners, Inc., Ronald Waldridge, M.D., Stacy Jensen, APRN, Christy Coleman, PA, Geri McClain, Heather Lowe, Heather Neal, and Kristen Newton, are collectively referred to as the SHP Defendants. [*See* R. 201 at 1.]

inmates while held at the Shelby County Detention Center.  [R. 196 at 2.]  He claims the assault

was orchestrated by a deputy jailer at the facility, that other jail officials were responsible for

allowing it to happen, and that he received inadequate medical care from the jail's health care

service provider, Southern Health Partners, after the assault.  *Id.* at 1.  Mr. Reece retained Nurse

Renee Dahring, APRN, as an expert "to review the medical care provided to [him] by Southern

Health Partners and its agents while Reece was incarcerated in the Shelby County Detention

Center on shoplifting charges."  [R. 184 at 1; R. 196 at 1–2.]

The SHP Defendants and Shelby County Defendants[2] filed separate motions to exclude

Nurse Dahring's testimony.  [R. 153; R. 157.]  Judge Atkins issued a Recommended Disposition,

recommending the SHP Defendants' motion be granted in part and denied in part, and that the

Shelby County Defendants motion be granted.  [R. 196 at 23.]  As to the SHP Defendants'

motion, Judge Atkins recommended it be granted as it relates to Nurse Dahring's opinions

related to Dr. Waldridge and PA Coleman, and denied as relates to APRN Jensen, LPNs Neal,

Newton and McClain, and RN Lowe.  *Id.*

**B**

Under Federal Rule of Civil Procedure 72(b)(2), a party has fourteen days after service to

register any objections to the Recommended Disposition or further appeal is waived.  In order to

receive *de novo* review by this Court, any objection must be specific.  28 U.S.C. § 636(b); *Curry*

*v. City of Mansfield Ohio/Wastewater Treatment Plant*, 201 F.3d 440 (unpublished table

opinion) (6th Cir. 1999).

Both the SHP Defendants and Plaintiff Joshua Reece filed timely objections to Judge

---

[2] Defendants Shelby County, Kentucky d/b/a Shelby County Detention Center; Bobby Waits, individually and in his official capacity as Shelby County Jailer; and Christy Bailey are collectively referred to as the Shelby County Defendants.  [*See* R. 157 at 1.]

Atkins' Recommended Disposition.  [R. 201; R. 202.]  The SHP Defendants argue that Judge Atkins "incorrectly determined that [Nurse Dahring's] testimony should be allowed with regard to Defendants Jensen, and Defendants Lowe, McClain, Neal and Newton."  [R. 201 at 2.] Plaintiff Reece, on the other hand, argues Judge Atkins "erred in recommending that the Court exclude [Nurse] Dahring, from opining on Dr. Waldridge and physician assistant Christy Coleman . . . ."  [R. 202 at 1.]  These objections are sufficiently definite to trigger this Court's obligation to conduct a *de novo* review.  *See* 28 U.S.C. § 636(b)(1)(c).

The Court has now reviewed the record, the Recommended Disposition, and the parties' objections and, for the following reasons, the SHP Defendants' objections will be **OVERRULED** in part and **SUSTAINED** in part and Plaintiff Reece's objections will be **OVERRULED** in part and **SUSTAINED** in part.

## II

### A

The SHP Defendants argue Judge Atkins erred in recommending that Nurse Dahring's opinions be deemed admissible as to five different Defendants.  The Court turns first to the findings related to Defendant Stacy Jensen, APRN.

### 1

Mr. Reece seeks to introduce testimony from Nurse Dahring that APRN Jensen was negligent towards Mr. Reece in "fail[ing] to take an acceptable history and perform[ing] only incomplete and cursory examination," which led to missing "clear clinical indicators for a CT exam . . . ."  [*See* R. 196 at 7.]  Defendants seek to exclude this testimony, arguing it is irrelevant due to the lack of "evidence of causation or injury."  [R. 153-1 at 20.]  As noted, Judge Atkins recommends denying this portion of Defendants' motion to exclude. [R. 196 at 15.]

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Judge Atkins found that Nurse Dahring's testimony as to APRN Jensen was "clearly relevant to the standard of care" concerning whether APRN Jensen should have sent or recommended that Mr. Reece be sent to the hospital for a CT scan.  [R. 196 at 14.]  And the logic here is clear: a failure to fully document Mr. Reece's medical history paired with a failure to conduct a full examination when he presented with injuries may have constituted deviations from the relevant standard of care.

Defendants object to this finding, arguing that without additional testimony from Nurse Dahring relating to the causation and injury elements of negligence her standard of care testimony is irrelevant.  [R. 201 at 3.]  Defendants' objection seems to be based largely on the concern that "Nurse Dahring is Plaintiff's only medical proof in this case" so, if she cannot attest to these latter elements, who can?  [R. 201 at 3.]  This argument misses the point.  [R. 196 at 13.]

Simply because Nurse Dahring did not expressly comment on other elements of Mr. Reece's claim as it relates to APRN Jensen does not render the otherwise relevant standard of care testimony irrelevant.[3]  And Defendants put forth no authority for their contrary position. Distilled down, Defendants' line of argument addresses whether Mr. Reece can establish the necessary elements for his negligence claim, not whether Nurse Dahring's opinion is relevant for purposes of a motion to exclude.[4]  Judge Atkins rightly declined to conflate these two related, yet

---

[3] The Court notes that, in her report, Nurse Dahring states more generally that SHP Defendants' failures "created a delay in diagnosing a significant skull fracture during which time Mr. Reece continued to suffer pain and distress."  [R. 201-3 at 5.]

[4] In fact, it appears the SHP Defendants have properly raised the causation issue in the context of their lengthy motion for summary judgment.  [R. 152 at 61 ("Plaintiff has introduced no expert proof to link any injury sustained by the Plaintiff to the actions or inactions of Defendant[] . . . Jensen . . . .").]

4

separate, inquiries.  [R. 196 at 14–15 ("[M]erely because Nurse Dahring is not addressing issues of causation and damages does not preclude her from offering her expert opinion about the standard of care.").]  This objection is overruled and this portion of Defendants' motion is denied.

2

SHP Defendants next object to Judge Atkins' finding as it relates to the admissibility of Nurse Dahring's opinions on Defendants Heather Neal, Kristen Newton, and Geri McClain, all LPNs.  [R. 201 at 6.]  Here, Mr. Reece seeks to introduce testimony from Nurse Dahring that LPNs Neal, Newtown, and McClain "failed to meet the nursing standards and were negligent when they conducted clinical evaluations that required making clinical decisions that exceeded their training and scope of practice."  [R. 196 at 16 (citing R. 153-14 at 4).]  Defendants seek to exclude this testimony, arguing Nurse Dahring did not rely "upon reliable methods to reach her conclusion that LPNs Neal, Newton, and McClain breached their standard of care."  [R. 196 at 16 (citing R. 153-1 at p. 23).]  More specifically, Defendants argue her testimony should be excluded because Nurse Dahring cited "no statute, regulation, industry standard or other support for her belief [that] employment of LPNs violated the standard of care."  [R. 153-1 at 20.]  Judge Atkins recommends denying this portion of Defendants' motion. [R. 196 at 18.]

Nurse Dahring opines that a LPN's role "is to gather information from the patient and then contact someone at a higher level of training to get direction on what to do."  [R. 196 at 17 (citing R. 153-13 at 59, 65).]  So, as Judge Atkins explained, Nurse Dahring finds fault with the LPNs' failure to refer Mr. Reece to a more highly-trained medical professional.  *Id.*  In her report, Nurse Dahring provides the factual background undergirding her opinions as well as her specific opinions as to each LPNs' alleged negligence.  [R. 153-14 at 2–4.]  Based on her extensive medical experience, much of it in the correctional setting, these opinions appear to be

5

well founded.  [R. 153-14 at 1 ("I have been a [RN] for 29 years and a family nurse practitioner for 18 years.  I have 18 years of experience in providing care for individuals in correctional settings.").]  For these reasons, Judge Atkins found that this portion of Nurse Dahring's testimony was sufficiently reliable and recommends denying this portion of Defendants' motion. [R. 196 at 17–18.]

Now, somewhat inexplicably, SHP Defendants represent that they were "surprised" by these opinions as they were only summarized in Plaintiff's response, not contained in Nurse Dahring's report or deposition.  [R. 201 at 6.]  Specifically, SHP Defendants argue that it is "news to them" that Nurse Dahring was "critical of the LPN's 'for failing to get the inmate seen by an APRN, physician's assistant, or physician who could perform an evaluation and order appropriate diagnostic tests.'"  [R. 201 at 6 (citing R. 184 at 9).]  But not only did Nurse Dahring include her conclusions as to the separate LPNs in the summary section of her report, she also cited the specific interactions between the LPNs and Mr. Reece which led to these conclusions. [R. 153-14 at 2–4.]  For example, in her report Nurse Dahring states that LPN Newton "failed in her duty to protect her patient when after her initial evaluation of Mr. Reece when she failed to consult with an RN, APRN, PA despite Mr. Reece's severe and serious injury."  [*Id.* at 4; *see also* R. 196 at 6 (citing the portions of Nurse Dahring's report which related to the LPNs).]  To the extent SHP Defendants are surprised by these opinions, a closer review of the relevant expert report would cure the confusion.

The SHP Defendants also argue that Nurse Dahring effectively opines that the LPNs were negligent by "simply showing up for work."  [R. 201 at 9.]  Indeed, in her deposition Nurse Dahring appears to express a belief that certain duties given the LPNs within the jail were outside of their scope of practice.  [R. 169 at 77–78 ("An LPN does not have the proper

6

preparation to take on this job."); *see also* R. 153-14 at 4.]  This concern from Defendants carries

more weight.  Logically, the fault with giving a medical provider duties beyond their ability

likely lies with the one making those assignments, not the providers themselves.  However,

Nurse Dahring further opined that "ultimately, it is the nurse's responsibility to recognize their

own limitations, just as it is mine."  [R. 169 at 77.]  And, as explained above, Nurse Dahring

took issue with how the LPNs performed their duties, not just their presence alone.  At this stage,

as Judge Atkins explained, "[t]he SHP defendants' objection[s] to Nurse Dahring's conclusion[s]

seem[] to go more to the credibility and weight of her testimony rather than its admissibility."

[R. 196 at 17 (citing *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)).]

Defendants may challenge Nurse Dahring's conclusions as to the LPNs at trial but, at this

juncture, the alleged unreliability of her opinions does not warrant exclusion of this portion of

her testimony.  This portion of Defendants' motion is denied.

**3**

     Lastly, SHP Defendants object to Judge Atkins' finding concerning the admissibility of

Nurse Dahring's opinions as to Heather Lowe, RN.  [R. 201 at 6.]  Here, Mr. Reece seeks to

introduce testimony from Nurse Dahring that takes issue with a more specific failure: Ms.

Lowe's failure to consult or refer Mr. Reece "to the APRN or PA[,] who were onsite and

conducting clinic that very same day."  [R. 196 at 16 (citing R. 153-14 at 4).]

     Before proceeding further, the basis for Nurse Dahring's opinion that Ms. Lowe was

negligent requires closer attention.  When drafting her expert report, Nurse Dahring was clearly

operating on the belief that the APRN or PA "were onsite and conducting clinic" when Mr.

Reece presented to Ms. Lowe on December 1.  [*See id.*; R. 169 at 79–82.]  But, based on the

report alone, it is unclear whether Nurse Dahring takes issue with Ms. Lowe's overall failure to

7

refer Mr. Reece to another medical professional or whether she specifically takes issue with the failure to immediately refer Mr. Reece in light of Nurse Dahring's belief that there was another medical professional on site at the time.  The factual timeline and Nurse Dahring's deposition testimony clear this up—it is the latter.

First, Nurse Dahring acknowledges in her report that, on December 1, Ms. Lowe "inform[ed] Mr. Reece [he] is on the list to see the [nurse practitioner]."  [R. 153-14 at 3.]  So, it appears there was no "general failure" to refer Mr. Reece to another, more highly trained medical professional.  Instead, Ms. Lowe confirmed Mr. Reece was to receive further attention.  Relatedly, Ms. Lowe saw Mr. Reece on December 1, a mere day before he received his December 2 X-ray.  *Id.*  As fleshed out in her deposition, Nurse Dahring has no opinion concerning the significance of the one-day delay in Mr. Reece receiving the X-ray.  [R. 169 at 84.]  This established, the Court can readily conclude that Nurse Dahring's opinion that Ms. Lowe was negligent was based primarily on the failure to immediately refer Mr. Reece to another medical professional where, importantly, Nurse Dahring believed there was another unidentified medical professional onsite at the time.  Nurse Dahring acknowledges as much in her deposition:

> Question: Now, your note says that Nurse Lowe did not consult with a provider. Do you allege that she had an obligation at that time to call the doctor? And if so, for what?
>
>  Answer: Well, if I calculated this correctly, I'm looking at my summary, I believe the provider was actually on site that day and so easily accessible to talk to about this. And this has been going on awhile at this point. This is, you know, a couple weeks.

[R. 169 at 80–81; *see also id.* at 82.]  Judge Atkins came to the same conclusion, finding that "Nurse Dahring's conclusion that RN Lowe's actions were unreasonable under the circumstances are supported by her belief that a provider was on site and available when Reece was seen by her."  [R. 196 at 20.]

SHP Defendants point to this allegedly unfounded belief in seeking to exclude this portion of Nurse Dahring's testimony.  They argue "her belief that the provider was there is based entirely upon speculation."  [R. 153-1 at 25.]  Judge Atkins rejected this argument, finding that "Nurse Dahring's failure to know whether a provider was on site goes again to the credibility and weight of her testimony (concerning the reasonableness of her actions under the circumstances) rather than wholesale exclusion."  [R. 196 at 20.]  In their objections, SHP Defendants continue to argue otherwise, contending that Nurse Dahring has no evidence to support this belief that the other, unidentified medical providers were on site.  [R. 201 at 11.]  Because Nurse Dahring's conclusion as to Ms. Lowe's negligence is based largely on this belief, and because, as Defendants point out, Nurse Dahring offers no factual support for this belief, the Court will sustain this objection.

"[A]n expert's opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known."  *See Pomella v. Regency Coach Lines, Ltd.,* 899 F. Supp. 335, 342 (E.D. Mich. 1995) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590 (1993)).  Stated otherwise, "[a]n expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (citation omitted).

In her deposition Nurse Dahring was unable to provide any basis for her earlier conclusion that "the APRN or PA[,] . . . were onsite and conducting clinic."  [R. 153-14 at 4.]  When pressed on the matter, she effectively admitted she speculated that there was a provider on site: "Question: Once again, without time records, you wouldn't know at what point in time Mr. Reece was brought up to medical and whether there was actually a provider on site at that

moment, would you?; Answer: No, I've not seen the time records." [R. 169 at 81–82; *see also id.* at 82.] Nurse Dahring did testify she was "going by the depositions and testimony that I received that the provider was on site." *Id.* at 82. However, neither Nurse Dahring nor Plaintiff have provided any citation to the relevant depositions or offered any other explanation concerning what evidence Nurse Dahring relied on for this belief. With nothing more to go on, the Court would similarly have to speculate that somewhere in the record there is support for this portion of Nurse Dahring's opinion. The Court declines to do so and finds this portion of her testimony is unreliable as it is based on speculation. *See McLean*, 224 F.3d at 801. This portion of the SHP Defendants' motion to exclude is granted and Nurse Dahring's testimony concerning the alleged negligence of Ms. Lowe is excluded.

**B**

The Court turns next to Mr. Reece's objections to the Recommended Disposition. Mr. Reece argues Judge Atkins erred in recommending that Nurse Dahring's opinions be excluded as to two Defendants: Ronald Waldridge, M.D. and Christy Coleman, PA.

**1**

Mr. Reece seeks to introduce testimony from Nurse Dahring that Dr. Waldridge "was negligent in his role as medical director when he failed to provide oversight for the APRN and PA with whom he directly contracted and assigned to carry out clinical duties in his stead." [R. 196 at 10 (citing R. 153-14 at 4).] SHP Defendants seek to exclude this portion of Nurse Dahring's testimony, arguing she is unqualified as she has never served as a medical director and lacks any other relevant experience. [*Id.* (citing R. 153-1 at 11–14).] In response, Mr. Reece argues that Nurse Dahring is qualified based on her extensive medical experience. [R. 184 at 9.] Judge Atkins recommends granting this portion of Defendants' motion to exclude. [R. 196 at 12.]

10

Judge Atkins acknowledged that, as an APRN, it was possible Nurse Dahring "could obtain the 'knowledge, skill, experience, [or] training' required to qualify as an expert on the standard of care required of a doctor supervising PAs and APRNs." [R. 196 at 11 (citing FED. R. EVID. 702).] However, Judge Atkins explained that Nurse Dahring did not show she had any prior experience which would qualify her to opine on this specific issue. *Id.* at 11–12. Mr. Reece objects to this finding, arguing that Nurse Dahring "had similar duties as lead nurse practitioner and Director of Clinical Services at the Ramsey County facilities" and is also "supervised by a medical director in her current position." [R. 202 at 4.] This objection is unavailing and must be overruled.

In attempting to establish Nurse Dahring is qualified on this issue, Mr. Reece relies on responsibilities and duties held by Nurse Dahring that are materially different from Dr. Waldridge's alleged duty to provide oversight in his role as medical director. *Id.* True, Nurse Dahring testified that, in her roles at the Ramsey County facilities, she participated in developing policies and procedures with respect to the medical staff—a duty one might associate with a medical director. [R. 169 at 27.] However, she further explained that drafting these policies was done in collaboration with the RNs and the head nurse and, on completion, the drafts were sent for review and approval by the medical director. *Id.* at 28. And it appears these policies and procedures concerned only the nursing staff. *Id.* ("[W]e all collectively . . . looked at them to make sure they complied with state nursing regulations and practice, scope of practice."). Upon submission, the medical director would then review the policies and make comments or revisions. *Id.* This type of experience is insufficient to establish she is qualified more generally to opine on the standard of care to be exercised by a medical director in overseeing other medical

11

providers.  Indeed, as noted by Judge Atkins, Nurse Dahring conceded that Dr. Waldridge is "not a peer" of hers.  [R. 196 at 11 (citing R. 153-13 at 135).]

Mr. Reece offers no other convincing explanation to support his contention that Nurse Dahring is qualified to opine on this issue.  [R. 202 at 4.]  The argument that she is qualified because she is "supervised by a medical director in her current position" carries no weight.  *Id.* The contention that a person is qualified to comment on the standard of care of a medical director simply because they are supervised by a medical director is, to put it mildly, untenable. Nurse Dahring is unqualified to opine on the standard of care to be exercised by Dr. Waldridge in this case.  As such, this portion of the SHP Defendants' motion to exclude is granted and Nurse Dahring's testimony concerning the alleged negligence of Dr. Waldridge is excluded.

**2**

Mr. Reece next objects to Judge Atkins' finding that Nurse Dahring's opinions related to PA Coleman should be excluded.  [R. 202 at 6.]  Mr. Reece seeks to introduce testimony from Nurse Dahring that "PA Coleman was negligent in her evaluation and treatment of Reece and in failing to recognize clinical indicators for a CT exam and disregarded the recommendation of a radiologist." [R. 196 at 12 (citing R. 153-14 at 4).]  SHP Defendants seek to exclude this portion of Nurse Dahring's testimony, again arguing as an APRN she is unqualified to provide her opinion on the standard of care applicable to another medical professional—here a physician's assistant.  [*Id.* (citing R. 153-1 at 15–16.]  In response, Mr. Reece argues Nurse Dahring is qualified because the knowledge and skills required by an APRN are sufficiently similar in this context to a physician's assistant.  [*See* R. 184 at 9.]  Judge Atkins recommends granting this portion of Defendants' motion to exclude.  [R. 196 at 13.]

To offer testimony, a proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education."  *In re Scrap Metal Antitrust*

*Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Based on these standards, Judge Atkins recommends excluding this portion of Nurse Dahring's testimony, explaining that "her role and experience as an APRN, by her own admission, requires different training and scope of practice" than a PA. [R. 196 at 13.] Mr. Reece objects to this recommendation, arguing that, while there are differences in education and licensing requirements between the two professions, the skills required and duties performed are largely the same. [R. 202 at 6.] Because Mr. Reece has shown that Nurse Dahring, APRN, has similar experience and skills as it relates to the job performed by PA Coleman in the Shelby County Detention Center, the Court will sustain this objection.

Defendants take issue with the difference in education and training between APRNs and PAs but state their concerns in generalized terms and offer no explanation as to the specific differences. [R. 153-1 at 15 (citing R. 169 at 10) ("The education and training for APRNs and PAs are different.").] In her deposition, Nurse Dahring acknowledged the technical difference but also noted that "in practice, we're very, very similar for what we can do" and, further, that the two professions are "kind of lumped into the same category of advanced practice clinicians." [R. 169 at 10, 12 (cleaned up); *see also* R. 171 at 15.] And, while there is little case law on this specific question, other courts have noted the similarities between two professions in terms of their qualifications and skill levels. *See Atencio v. Arpaio*, No. CV-12-02376-PHX-PGR, 2015 WL 11117187, at *4 (D. Ariz. Jan. 15, 2015); *see also Beck-Wilson v. Principi*, 441 F.3d 353, 360 (6th Cir. 2006) (noting, in an Equal Pay Act case, that the medical facility at issue "employed NPs and PAs interchangeably" based on their similar qualifications). There might be

13

a technical difference between the two professions, but it is not apparent that it is a meaningful difference for present purposes.

The same goes for the scope of practice distinction Defendants attempt to draw between the two professions.  Defendants note that the scope of practice for a PA in specific instances is "defined by the terms of the [relevant] collaborative agreement," whereas with APRNs that is not the case.  [R. 153-1 at 15–16.]  Again, Defendants fail to explain why this is a meaningful distinction.  On the record, it appears APRNs are capable, in a general sense of performing the same duties as a PA.  [*See* R. 153-14 at 10, 12.]  To this point, Defendants do not argue that PA Coleman's role in the jail was any different from her colleague, APRN Jensen.  In fact, the two providers worked opposite weeks at the jail in similar, if not identical roles.  [R. 171 at 15.]  While the record requires further development on this issue, it appears PA Coleman and APRN Jensen were viewed as interchangeable by the overseeing physician.[5]  APRN Jensen's deposition is particularly relevant here:

> Question: Okay. Do you know if a PA has the same abilities as an advanced registered nurse practitioner?
>
> Answer: As far as I know, they do.
>
> Question: So if I understand your testimony, your shift and Christy Coleman's shift never overlapped, correct?
>
> Answer: No.

*Id.* at 15.  So, too, is Dr. Waldridge's deposition testimony:

> Question: Okay. What is the alternative for an inmate to see a doctor if you are unavailable to see him or her at the Shelby County jail?
>
> Answer: The advanced practice clinicians, like nurse practitioners and PAs, would see -- you know, we would alternate weeks basically.

---

[5] As with APRN Jensen, Nurse Dahring's opinion concerning PA Coleman is that her failure to fully document Mr. Reece's medical history paired with a failure to conduct a full examination when he presented with injuries constituted deviations from the relevant standard of care.  [R. 153-14 at 4.]

[R. 170 at 19.]  In sum, the present record, although limited on this issue, reflects that PA Coleman was performing largely the same duties within the jail as her colleague, an APRN.  This established, the technical distinctions between the two professions are insufficient to show Nurse Dahring is unqualified from commenting on the standard of care to be exercised PA Coleman within her role at the jail.  *Berry*, 25 F.3d at 1351.

The Court must deny this portion of Defendants' motion to exclude.[6]  Of course, Mr. Reece must still fulfill his obligation at trial of establishing a foundation for this portion of Nurse Dahring's testimony.  And Defendants may certainly attack this testimony through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ." *Daubert*, 509 U.S. at 596.

C

The Shelby County Defendants also filed a motion to exclude.  [R. 157.]  In that motion, they seek to exclude Nurse Dahring's following opinions: "(1) despite the seriousness of his injury, Reece is not sent immediately to an emergency room as would happen in any other setting; (2) the care for Reece during the month he was in custody at Shelby County Detention Center fell far below the community standards; and (3) these actions and conditions created a delay in diagnosing a significant skull fracture during which time Reece continued to suffer pain and distress."  [R. 196 at 21 (citing R. 157 at 3, R. 157-1 at 4–5).]  Mr. Reece did not file a response to this motion.  Judge Atkins reviewed the motion and relevant portions of the record and recommends granting the motion.  [R. 196 at 21–23.]  No objections were filed as it relates to this portion of Judge Atkins' recommendation.

---

[6] The SHP Defendants' arguments related to Nurse Dahring's failure to opine on causation and injury as it relates to PA Coleman are rejected for the same reasons expressed in Section II.A.1, *supra*.  [*See* R. 153-1 at 16–19.]

When no objections are made this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 151 (1985). Nevertheless, this Court has examined the record and agrees with this portion of the Recommended Disposition. Shelby County Defendants' motion to exclude is granted, consistent with the findings within the Recommended Disposition. [R. 196 at 21–23.]

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.      The SHP Defendants' Objections [**R. 201**] to the Magistrate Judge's Report and Recommendation [R. 196] are **OVERRULED in part and SUSTAINED in part**;

2.      Plaintiff Joshua Reece's Objections [**R. 202**] to the Magistrate Judge's Report and Recommendation [R. 196] are **OVERRULED in part and SUSTAINED in part**

3.      The Magistrate Judge's Report and Recommendation [**R. 196**] is **ADOPTED in part**, consistent with the above findings;

4.      SHP Defendants' Motion to Exclude [**R. 153**] is **GRANTED in part** and **DENIED in part**, consistent with the above findings;

5.      Shelby County Defendants' Motion to Exclude [**R. 157**] is **GRANTED**.

This the 10th day of August, 2020.



Gregory F. Van Tatenhove
United States District Judge