UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| JOSHUA REECE, | ) |
| Plaintiff, | ) Civil No. 3:16-cv-00069-GFVT |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| WILLIAM ANTHONY CAREY, | ) **&** |
| | ) **ORDER** |
| Defendant. | ) |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Plaintiff Joshua Reece's Motion for Attorneys' Fees, made pursuant to 42 U.S.C § 1988. [R. 287.] The requested fees and costs would reimburse the Plaintiff's attorneys for their representation in this case. The Defendant does not contest that the Plaintiff is entitled to some award of attorneys' fees, but disputes the number of hours, hourly rate, and some costs claimed by Plaintiff's counsel. [*See* R. 289.] For the following reasons, the Plaintiff's Motion for Attorneys' Fees and Costs [R. 287] is **GRANTED** in part and **DENIED** in part.

**I**

The Plaintiff, Joshua Reece, brought this action alleging that he was beaten by ten to twelve inmates on the instruction of Defendant Carey, a jailer at the Shelby County Detention Center, while jailed for stealing a two-dollar food item. [R. 1.] He brought claims against many Defendants for excessive force, deliberate indifference to his medical needs, negligence, intentional infliction of emotional distress, and civil conspiracy. *Id.* at 12-18. The Defendants can be divided into two groups: the Shelby County Defendants, including Shelby County and

some of its employees, and the SHP Defendants, including SHP—the group responsible for healthcare at the Shelby County Detention Center—and its employees. The Plaintiff and the SHP Defendants eventually agreed to dismiss all of his claims against them, leaving only the claims against the Shelby County Defendants. [R. 243.]

At the final pre-trial conference, Defendant Carey stipulated to his liability and all of the Shelby County Defendants other than Carey were dismissed. [R. 270.] The Court conducted a trial solely on the issue of damages and the jury awarded the Plaintiff over $2,000,000. [R. 285.] Now, the Plaintiff moves the court for an award of attorneys' fees and costs. Counsel claims $343,903 in attorneys' fees, $29,995.34 in costs, and $6,875 for preparing the Motion for Attorneys' Fees, for a total of $380,773.34. [R. 287 at 17.] Defendant Carey argues that some of the claimed work was not sufficiently related to the claims against him to make him liable for those fees. [R. 289 at 2-9.] He also argues the requested rate is unreasonable and that the Plaintiff is not entitled to some of his requested costs. *Id.* at 9-12.

## II

Pursuant to the Civil Rights Attorney's Fees Awards Act, the prevailing party in a civil rights action brought under 42 U.S.C. § 1983 may recover its reasonable attorney's fees. *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). A "prevailing party" is one who succeeds on a significant issue "which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby¸* 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Plaintiff is a prevailing party because he achieved a significant jury verdict against Defendant Carey. [R. 285.] The Defendant does not dispute that the Plaintiff is a "prevailing party" within the meaning of § 1988. [*See* R. 289.]

2

Once a court determines a party prevailed and is entitled to attorneys' fees, the court must then determine what fees are owed and how much of those fees should be paid by the opposing party. Any award must be reasonable. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). To determine reasonable attorneys' fees, a court must determine the "lodestar" amount, which is the attorney's reasonable hourly rate multiplied by the number of proven hours reasonably expended. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). "An award-seeking party should submit evidence of hours worked and the rates sought." *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).

The Plaintiff requests compensation for the work of two attorneys: Garry R. Adams and David N. Ward. He calculated each attorneys' lodestars as follows:

| Attorney | Requested Rate | Hours | Lodestar |
|---|---|---|---|
| Garry R. Adams | $500 | 412.2 | $206,100 |
| David N. Ward | $275 | 501.1 | $137,803 |
| **Total** | | **913.3** | **$343,903** |

[R. 287 at 12.] In support of these figures, each attorney has filed a detailed time report and a declaration averring the accuracy of that report. [R. 287-2; R. 287-3.] Additionally, the Plaintiff submitted declarations from Gregory A. Belzley and Hans Poppe, local attorneys who attest that the claimed rates are reasonable for similarly experienced lawyers in Kentucky. [R. 287-5.] The Defendant disagrees, objecting to the requested rate and hours, as well as challenging some of the requested costs. [R. 289.] Each objection will be addressed in turn.

A

The Defendant first objects to the requested rates, arguing they are higher than the prevailing market rate for similar attorneys. [R. 289 at 9-11.] The Court has broad discretion in determining a reasonable hourly rate and uses "as a guideline the prevailing market rate, which is

3

defined as 'the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" *Husted*, 831 F.3d at 715 (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 1994)).

First, the Defendant does not sufficiently explain his objection to the proposed $275 per hour rate for Mr. Ward. [*See* R. 289 at 9-11.] He cites *Miller v. Davis*, in which another court in the Eastern District approved rates in the $250-$350 range. *Id.* at 10. This actually supports the requested rate for Mr. Ward, as it shows his rate is reasonable for this venue. Further, this Court recently approved hourly rates of $200-$375 in a case brought under 42 U.S.C. § 1983. *Hart v. Thomas*, No. 3:16-cv-00092-GFVT-EBA, 2020 WL 708449 (E.D Ky. Feb. 10, 2020). Accordingly, the Court has no basis to believe the proposed rate of $275 per hour for Mr. Ward's services is unreasonable and will not reduce that rate.

However, the proposed rate for Mr. Adams is more concerning. A $500 hourly rate is not commonly approved in this District. In *Miller*, the Plaintiff proposed rates from $350-700 for their *out-of-town* counsel. 267 F. Supp. 3d 961, 995 (E.D. Ky. 2017). The Court noted those rates were "clearly . . . out of step with the local market." *Id.* at 996 (quoting *Husted*, 831 F.3d at 719). This suggests a $500 rate is unreasonable because Mr. Adams is local, not out-of-town counsel. To support his requested rates, the Plaintiff submitted a Western District case in which Mr. Adams participated. However, that case is more harmful than helpful to the Plaintiff. First, the court declined to use the Laffey matrix to determine Mr. Adams's rate because the matrix itself states it is intended to be used in the District of Columbia. [R. 287-7 at 7-8; R. 287-4.] Mr. Adams again uses the Laffey matrix to support his requested $500 rate in this matter. This Court agrees that the matrix is not persuasive outside of the District of Columbia, as it is clearly intended to reflect fees in that area alone. The Western District court then concluded $500 was

4

an unreasonable hourly rate for Mr. Adams and reduced his rate to $400 per hour. [R. 287-7 at 6-9.] The Plaintiff does not explain why he believes Mr. Adams is owed a rate $100 higher just two years later in a neighboring district. Nor do the declarations submitted by the Plaintiff sufficiently explain his contention that Mr. Adams's requested fee is reasonable. "Bare affidavits" are insufficient to prove a proposed rate is reasonable. *In re January 4, 2008 Subpoena to Kasten*, No. 08-16-KSF, 2008 WL 1908755, at *2 (E.D. Ky. Apr. 28, 2008). The Court finds that the proposed $500 hourly rate for Mr. Adams is unreasonable.

      The Defendant does not propose what a reasonable fee for Mr. Adams would be and merely asks the Court to reduce the requested fees. The Court will rely on its sister district and reduce Mr. Adams's rate to $400. This is still a generous rate, as it is on the higher end of fees approved in this District. *See L.M. by and through M.M. v. Henry Cnty. Bd. of Educ.*, 2021 WL 236307 (E.D. Ky. Jan. 22, 2021) (approving a rate of $325 per hour for local counsel); *Human Rights Defense Ctr. v. Ballard*, 2020 WL 2513822 (E.D. Ky. May 15, 2020) (granting fees at unopposed rates in the $125-$350 range); *Clark v. West Iris Transport, Inc.*, No. 18-168-DLB-CJS, 2020 WL 2781601 (E.D. Ky. Feb. 27, 2020) (finding $400 is an appropriate rate for a local partner in an FLSA case). The most appropriate comparison is this Court's approval in *Hart* of rates ranging from $200-$375. 2020 WL 708449. That case, like the one at hand, was based on a civil rights claim and the plaintiff requested attorneys' fees pursuant to 42 U.S.C. § 1988. *Id.* The Court is comfortable awarding Mr. Adams a rate on the high end of those regularly approved in this District because of his exceptional skill and experience in litigating civil rights cases. [*See* R. 287-2]; *Adcock-Ladd*, 277 F.3d at 350. Accordingly, the Court approves Mr. Ward's rate of $275 per hour and reduces Mr. Adams's rate from $500 to $400 per hour.

**B**

Next, the Defendant challenges the hours claimed by Plaintiff's counsel. [R. 289 at 2-9.] He argues that some of the work Plaintiff's counsel is requesting fees for was not "reasonably related" to the outcome of the litigation. *Id.* Specifically, he alleges any hours for work related to (1) the claims against the SHP Defendants, (2) claims of municipal and supervisory liability against Shelby County and Waits, respectively, and (3) the related but distinct bankruptcy proceeding and FBI meetings do not arise from the same set of operative facts as the Plaintiff's claim against Defendant Carey. *Id.*

The Plaintiff is entitled to attorneys' fees for the number of hours his attorneys "reasonably expended" on his representation. *Echols v. Express Auto, Inc.*, 857 Fed. Appx. 224, 227 (6th Cir. 2021). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Cases often involve multiple interrelated claims, some of which the prevailing party may not have been successful on. In those cases, the prevailing party is still entitled to compensation for hours spent on the unsuccessful claims if they "'involve a common core of facts,' are 'based on related legal theories,' or when counsel's time is 'devoted generally to the litigation as a whole, making it difficult to divide the hours expended.'" *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (quoting *Hensley*, 461 U.S. at 433).

**1**

The Court must first determine whether the Plaintiff's fees should be reduced for the work completed on the claims against the SHP Defendants. The SHP claims were settled before trial. [R. 242.] The Defendant argues those claims are unrelated to those against him and asks the Court to use its discretionary power to reduce fee awards to account for this settlement. [R.

6

289 at 2-4.] The Plaintiff contends the Defendant has too narrow a view of relatedness and that there is no support for reducing his award because he settled with other parties. [R. 291 at 2-7.]

First, the Court must determine whether the claims against the SHP Defendants arise from the same "common core" set of facts as those against Defendant Carey. *Barnes*, 401 F.3d at 745. If not, Defendant Carey is not liable for attorneys' fees compensating the Plaintiff for the time his attorneys spent working on those claims. *See id.* The Plaintiff relies on the Sixth Circuit's ruling in *Kidis v. Reid*. 976 F.3d 708 (6th Cir. 2020). Kidis was arrested by two officers, one of whom he successfully sued for excessive force. *Id.* at 713. He was unsuccessful on his claim of excessive force against the other officer, and his deliberate indifference claims against both officers. *Id.* However, the Sixth Circuit found he was entitled to attorneys' fees for the work on all of the claims because they arose from the same set of facts: "[Kidis's] arrest by Moran and its attending consequences." *Id.* at 721.

The Court finds that the case at hand is distinct from *Kidis*. The deliberate indifference claims in that matter were against the Defendant who actually used excessive force against the Plaintiff and another Defendant who was present while that violation occurred. *Id.* The "common core of facts" standard is much more easily met in that circumstance, where the same officers are present for the unlawful conduct which injured the Plaintiff, then exhibit deliberate indifference to that injury. In contrast, the Plaintiff alleged that Defendant Carey exhibited excessive force by ordering inmates to attack him. [R. 1 at 7.] Then, he alleged the SHP Defendants exhibited deliberate indifference to his medical needs by providing inadequate care. *Id.* at 7-10. The Plaintiff states he was brought to the medical department over twenty hours after the attack occurred. *Id.* at 7. Given that the responsible parties for the SHP claims were an entirely different group of Defendants than Defendant Carey and the significant amount of time

7

that elapsed between the excessive force and the alleged deliberate indifference, the Court finds the SHP claims did not arise from the same "common core of facts" as those against Carey. Accordingly, the Defendant is not liable for attorneys' fees for the work expended on those claims.

The Defendant identifies 41.19 hours claimed by Mr. Adams and 118.8 hours claimed by Mr. Ward on work completed on the SHP claims. [R. 289 at 4-6.] In his reply, the Plaintiff argues 11.9 of the hours identified for Mr. Ward relate to the Shelby County claims, not the SHP claims. [R. 291 at 5, n. 4.] These hours were spent on the deposition of Donald Leach, who was an expert witness for the Shelby County Defendants. [*See* R. 105.] Therefore, the Court will reduce Mr. Adams's claimed hours by 41.19 hours and Mr. Ward's by 106.9 hours.

**2**

Next, the Defendant asks the Court to exclude any work completed on the claims against Shelby County and Jailer Waits, arguing they are not sufficiently "interconnected" with those against Defendant Carey and were dismissed. [R. 289 at 6-7.] The Defendant cites no support for either of those propositions and does not elucidate this argument in much detail. *See id.* The Plaintiff explains that the time his counsel spent on the claims against the Shelby County Defendants was all collective and therefore inseparable. [R. 291 at 7-9.]

The court finds that the Plaintiff's claims against the County and Defendant Waits for municipal and supervisory liability arise from the same common core of facts as those against Defendant Carey. Compare this matter to *Bryant*, in which the plaintiff brought claims for excessive force against an individual officer and against the city, police department, police chief, and mayor for an official practice permitting excessive force. *Bryant v. Nighbert*, No. Civ. A.03-183, 2005 WL 2234636, at *6 (E.D. Ky. Sept. 14, 2005). The court held claims alleging a policy

8

condoning the use of force "necessarily involved" the conduct of the officer directly responsible for excessive force. *Id.* In the case at hand, the claims against Shelby County and Defendant Waits allege a practice of condoning deliberate indifference and use of force. [R. 1 at 14-15.] Those claims "necessarily involve" Defendant Carey carrying out that policy through his actions towards the Plaintiff. Further, research into the claim against Defendant Carey would "reasonably involve research into the policies of the department, so it is difficult to divide the hours between the claims. *Bryant*, 2005 WL 2234636, at *6. The Defendant concedes that these claims are "somewhat related" to the claims against him. [R. 289 at 6.] The Court finds Defendant Carey is liable for the Plaintiff attorneys' fees for time spent on the claims against Shelby County and Waits because they arise from the same "common core" of facts as those against the Defendant.

### 3

Finally, the Defendant asks the Court to exclude compensation for time the Plaintiff's attorneys spent on meetings with the FBI and a separate bankruptcy proceeding. [R. 289 at 8.] The Plaintiff's reply explains these efforts in more detail. The hours Plaintiff's counsel expended with the FBI assisted the Plaintiff in providing a statement related to Defendant Carey's later federal criminal prosecution. [R. 291 at 11.] The bankruptcy proceeding occurred because while this case was pending, Carey "sought to add this litigation to his already closed bankruptcy case." *Id.* at 10. The Plaintiff filed an adversary complaint in that proceeding protecting his ability to recover in this matter.

The Supreme Court has held that attorneys can be compensated for work completed on "administrative hearings to enforce the civil rights claim prior to the litigation," or hearings that are "'useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it

reached before settlement.'" *North Carolina Dept. of Transp. v. Crest St. Comty. Council, Inc.*, 479 U.S. 6, 15 (1986) (quoting *Webb v. Dyer Cnty. Bd. of Educ.*, 471 U.S. 234, 243 (1985)). In *Weisenberger*, the Sixth Circuit permitted successful § 1983 plaintiffs to recover attorneys' fees incurred in defending the initially successful claim on appeal. *Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir. 1979). The court reasoned that the purpose of § 1983 is to "encourage the private prosecution of civil rights through the transfer of costs of litigation to those who infringe upon basic civil rights." *Id.* Not allowing a successful litigant to recover the costs of defending their award would frustrate the purpose of the Act. *Id.*

The Court finds that this logic extends to the Plaintiff's filing an adversary complaint in Defendant Carey's bankruptcy action. The Plaintiff's attorneys' work in the bankruptcy case protected his $2,000,000 award from being discharged, which would have precluded the Plaintiff from collecting that award. This would frustrate § 1983, which exists in part to financially compensate people for violations of their civil rights. *See Carey v. Piphus*, 435 U.S. 247, 254-56 (1978). Accordingly, filing an adversary complaint to protect a potential award from being discharged can be considered an action "useful and of a type ordinarily necessary to advance the civil rights litigation." *Webb*, 471 U.S. at 243. The Court therefore will not reduce the requested attorneys' fee for the time spent on the bankruptcy proceeding.

The same cannot be said for the Plaintiff's attorneys' assistance in the FBI investigation. Mr. Adams's work with the FBI assisted the Plaintiff in providing a statement about the incident which influenced Carey's later criminal prosecution. [R. 291 at 11.] The Plaintiff claims he is entitled to attorneys' fees for this work because the investigation is "clearly . . . related to the claims against Defendant Carey." *Id.* This misstates the standard for determination of whether a party owes fees for work on a separate hearing. Rather than relatedness, such fees are

10

compensable if they are (1) an administrative hearing "to enforce the civil rights claim prior to the litigation," or (2) a hearing that is "'useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement.'" *Crest St.*, 479 U.S. at 15. Participating in a criminal investigation is certainly not an administrative hearing to enforce the civil right, and the interview did not occur before the litigation. [*See* R. 291 at 11.] Nor would the Plaintiff's FBI interview be "necessary to advance the civil rights litigation. *Crest St.*, 479 U.S. at 15. Therefore, the Plaintiff's attorneys' work assisting him in providing testimony to the FBI is not the type of separate proceeding that is compensable under 42 U.S.C. § 1988. The requested award will be reduced by 6.47 hours.

### C

Finally, the Defendant objects only to the Plaintiff's claimed costs for expert fees. [R. 289 at 11-12.] The party seeking costs "bears the burden of establishing that the expenses he seeks to have taxed as costs are authorized by applicable federal law . . . ." *Epling v. United States*, 958 F. Supp. 312, 317 (W.D. Ky. 1997) (quotation omitted). Taxable expenses are contained in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-45 (1987). Section 1920 provides for recovery of fees for witnesses. However, this is limited by 28 U.S.C. § 1821, which authorizes witnesses to be paid an only an attendance fee of $40 per day and travel expenses. *See* 28 U.S.C. §§ 1821(b), (c)(2) and (4). The Supreme Court explicitly held in *Casey* that 42 U.S.C. § 1988, which governs fees and costs in civil rights cases, does not change this limitation. *West Virginia Univ. Hosp's, Inc. v. Casey*, 499 U.S. 83, 102 (1991).

The Plaintiff originally requested $22,280 in costs, which included the experts' fees. [R. 278-8 at 1.] In response, the Defendants cites the limitation expressed in § 1988, which only allows a prevailing party to recover expert fees when the proceeding is under 42 U.S.C. § 1981

11

or § 1981(a). [R. 289 at 11-12.] As this case was brought under § 1983, he argues the Plaintiff cannot recover more than the $40 daily attendance fee and mileage cost provided in 28 U.S.C. § 1821. *Id.* The Plaintiff concedes that he is limited to recover those specified costs. [R. 291 at 13.] He amends his request to a total of $104.40 for Richard Edelson and $208.80 for Sara Ford, in addition to the other claimed costs. *Id.* The Court agrees that this updated total is correct and accordingly grants the amended request for a total of $8,028.54 in costs.

### III

The Court agrees with some of the Defendant's arguments that the fee award in this matter should be reduced. The Court will reduce Mr. Adams's rate from $500 to $400 to align more closely with the local market. The Court also finds that Defendant Carey is not liable for fees for time expended on (1) the SHP claims, and (2) the FBI investigation. Finally, the Court will decrease the requested costs, as agreed upon in the Plaintiff's Reply. Otherwise, the Plaintiff will receive his requested fees and costs. The following chart portrays the updated attorneys' fees:

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Garry R. Adams | $400 | 364.54 | $145,816 |
| David N. Ward | $275 | 394.2 | $108,405 |
| **Total** | | **758.74** | **$254,221** |

Accordingly, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Attorneys' Fees **[R. 287]** is **GRANTED** in part and **DENIED** in part;

2. The Defendant **SHALL PAY** Plaintiff a total of **$254,221** in attorneys' fees for the work performed by Garry R. Adams and David N. Ward;

      3.      The Defendant **SHALL PAY** Plaintiff a total of **$6,875** to compensate the Plaintiff for the time spent preparing the Motion for Attorneys' Fees, and;

      4.      The Defendant **SHALL PAY** a total of **$8,028.54** for litigation costs.

This the 7th day of February, 2022.

Gregory F. Van Tatenhove  
United States District Judge